17 F.3d 671
 Patrick CARR, Appellee,
v.
AMERICAN RED CROSS; Osteopathic Medical Center of
Philadelphia, Osteopathic Medical Center of
Philadelphia, Appellant.
OSTEOPATHIC MEDICAL CENTER OF PHILADELPHIA, Petitioner,
v.
Patrick CARR and American Red Cross, Respondents,
and
The Honorable Stewart Dalzell, District Judge, United States
District Court for the Eastern District of
Pennsylvania, Nominal Respondent.
 Nos. 93-1392, 93-1450.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 28, 1993.
Decided March 4, 1994.
 
 Charles W. Craven (Argued) Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for Osteopathic Medical Center of Philadelphia.
 Joseph R. Livesey (Argued), Allen R. Bunker, Joseph R. Livesey Associates, Philadelphia, PA, for Patrick Carr.
 Howard M. Klein, John A. Guernsey, William J. O'Brien, Conrad, O'Brien, Gellman & Rohn, Philadelphia, PA, for American Red Cross.
 Before: ROTH, LEWIS, and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 This case comes to us on appeal (No. 93-1392) from, and on petition for writ of mandamus (93-1450) to, the United States District Court for the Eastern District of Pennsylvania. Defendant and petitioner, Osteopathic Medical Center of Philadelphia ("Osteopathic"), asks us to review an order of the district court granting plaintiff Patrick Carr's ("Carr") motion to dismiss Osteopathic's co-defendant, American Red Cross ("Red Cross"), from Carr's personal injury suit. Carr's motion also sought a remand of the action to the Philadelphia County Court of Common Pleas for lack of subject matter jurisdiction. Osteopathic's appeal and petition require us, once again, to address the scope of 28 U.S.C. Sec. 1447(d), with its prohibition of appellate review of a district court's order of remand issued pursuant to 28 U.S.C. Sec. 1447(c).[1]
 
 
 2
 We hold that the district court could not deprive Osteopathic of its right to appeal from the district court's order dismissing Red Cross. Because of that holding, and our analysis of the reviewability of remand orders pursuant to 1447(d), we also hold that we may review the district court's order remanding the proceeding to the state court. In conjunction with these holdings, we conclude that the district court erred in dismissing Red Cross as a party to the Carr action and thereby dismissing the Osteopathic cross-claim.
 
 
 3
 Thus, we will reverse the district court's order dismissing Red Cross and will direct that the district court reinstate Red Cross as a party to the action, and reinstate Osteopathic's cross-claim against Red Cross. We also will direct the district court to take all appropriate actions, after it has reinstated Red Cross, to vacate its order of remand and, consistent with this opinion, to conduct further proceedings in federal court.
 
 
 4
 * On September 10, 1990, Carr initiated a personal injury suit in the Court of Common Pleas of Philadelphia County to recover damages from Red Cross and Osteopathic as a result of an H.I.V.-infected blood transfusion Carr had received during a July 1984 operation at the Osteopathic Medical Center. Red Cross invoked its federal charter and filed a timely notice of removal to the United States District Court for the Eastern District of Pennsylvania. On November 1, 1990, the district court, acting sua sponte, remanded the case to the Court of Common Pleas, rejecting Red Cross' contention that its charter automatically conferred federal jurisdiction over civil actions to which Red Cross is a party.
 
 
 5
 After remand, Carr filed an amended complaint. Osteopathic answered the amended complaint and asserted a cross-claim for contribution and indemnity against Red Cross.[2]
 
 
 6
 On July 10, 1992, following the Supreme Court's decision in American Red Cross v. S.G., --- U.S. ----, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), which held that the Red Cross charter confers federal jurisdiction over civil cases to which Red Cross is a party, Red Cross once again removed the proceeding to the district court.[3]
 
 
 7
 On February 5, 1993, Carr moved to dismiss Red Cross and to remand the case again to the Court of Common Pleas. Carr contended that the district court no longer had jurisdiction as the result of a joint tortfeasor release Carr gave Red Cross on January 25, 1993, in settlement of Carr's claims against Red Cross.
 
 
 8
 On February 22, 1993, the district court judge granted Carr's motions to dismiss and remand, reasoning that federal subject matter jurisdiction no longer existed after Red Cross entered into a release with Carr and that, pursuant to 28 U.S.C. Sec. 1367(c), he would not exercise any residual supplemental jurisdiction over Carr's claim against Osteopathic.[4]
 
 
 9
 After having moved for reconsideration of the district court's February 22 order, which the district court denied on April 22, 1993, Osteopathic filed a timely notice of appeal.[5] On May 12, 1993, Osteopathic filed a petition for writ of mandamus directing District Court Judge Dalzell, inter alia, to vacate his February 22 order. We consolidated these matters by order dated May 26, 1993.
 
 II
 
 10
 Although Carr contests the finality of the district court's February 22 order for purposes of review,[6] Osteopathic argues that the district court's dismissal order is reviewable as a "collateral final order."
 
 
 11
 Relying on City of Waco v. United States Fidelity & Guaranty Co., 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934), we have embraced the principle that a district court cannot prevent appellate review of a final collateral order by contemporaneously remanding a case to state court. Powers v. Southland Corp., 4 F.3d 223, 226 (3d Cir.1993); Aliota v. Graham, 984 F.2d 1350, 1353 (3d Cir.1993). Such an order, however, must satisfy two separate jurisdictional requirements. First, it must avoid the bar to appellate review in 28 U.S.C. Sec. 1447(d). Second, it must satisfy the finality requirement of 28 U.S.C. Sec. 1291.
 
 A.
 
 12
 In City of Waco v. United States Fidelity & Guaranty Co., 293 U.S. 140, 143, 55 S.Ct. 6, 7, 79 L.Ed. 244 (1934), the Supreme Court held that 28 U.S.C. Sec. 1447(d) did not bar appellate review of a collateral order that led to remand where the order, "in logic and in fact," preceded that of remand. We recently held in Powers v. Southland Corp., 4 F.3d 223 (3d Cir.1993), that for a collateral order to come under the City of Waco rule, the order must be both logically precedent to, and separable from, the remand decision.
 
 
 13
 If the court looks to an issue for the purpose of determining subject matter jurisdiction, the issue is not separable because it cannot be said to have preceded the remand decision "in logic and in fact." City of Waco, 293 U.S. at 143, 55 S.Ct. at 7 (emphasis added). If, however, as in City of Waco, the issue has independent relevance in adjudging the rights of the parties (i.e., relevance beyond determining the existence of federal subject matter jurisdiction), the decision is separable and falls within the reasoning of City of Waco--even if it also happens to have an incidental effect on the court's jurisdiction.
 
 
 14
 4 F.3d at 228 (3d Cir.1993).
 
 
 15
 Inasmuch as the order of dismissal in the present case arose out of Carr's release of Red Cross from tortfeasor liability, the underlying dismissal order clearly had independent relevance in adjudging the rights of all three parties involved in this action. That is, the ramifications of the dismissal order impacted on more than the issue of federal subject matter jurisdiction alone.
 
 
 16
 Consequently, we conclude that the district court's order dismissing Red Cross is separable from the subsequent order of remand. Therefore, appellate review of the dismissal order is not barred by 28 U.S.C. Sec. 1447(d). Accord Aliota v. Graham, 984 F.2d at 1353 (3d Cir.1993) (holding question of resubstitution separate from question of remand and, thus, reviewable on appeal).
 
 B.
 
 17
 We also conclude that the district court's February 22 order of dismissal is final, within the meaning of 28 U.S.C. Sec. 1291.
 
 
 18
 We have recognized that, in general, "[a] 'final decision' is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " Praxis Properties, Inc. v. Colonial Savings Bank, S.L.A., 947 F.2d 49, 54 n. 5 (3d Cir.1991), quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). We also have recognized an exception to this rule, the so-called "collateral final order doctrine." Van Cauwenberghe v. Biard, 486 U.S. 517, 522, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988). We believe that the district court's order of dismissal was "final" under the collateral final order doctrine, as well as under traditional finality analysis.
 
 1.
 
 19
 Under Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), and its progeny, for an order to come under the collateral final order doctrine it "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). "If the order at issue fails to satisfy any one of the above requirements, it is not appealable under the collateral-order exception to Sec. 1291." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 276, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988). We conclude that the three-part test is satisfied under the circumstances presented by the case before us.
 
 
 20
 The "conclusiveness" prong of the test clearly is satisfied inasmuch as the district court's determination represented its final word on dismissal. Not only did the district court "conclusively determine the discrete legal question that is the subject of this appeal," Praxis Properties, 947 F.2d at 56 (3d Cir.1991), but, in addition, "[w]e can perceive of no circumstances under which the district court would revisit the legal question that [the appellant] now appeals to this court." Id.
 
 
 21
 A more difficult question is presented by the second prong of the collateral final order test: whether the district court's order resolved an important question completely separate from the merits of the action. Underlying the "separateness" requirement of the collateral final order doctrine is the settled view that "[a]llowing appeals from interlocutory orders that involve considerations enmeshed in the merits of the dispute would waste judicial resources by requiring repetitive appellate review of substantive questions in the case." Van Cauwenberghe v. Biard, 486 U.S. 517, 527-28, 108 S.Ct. 1945, 1952-53, 100 L.Ed.2d 517 (1988).
 
 
 22
 In Van Cauwenberghe, the Supreme Court held that the denial of a motion to dismiss on forum non conveniens was not separate from the merits because, "in assessing a forum non conveniens motion, the district court generally becomes entangled in the merits of the underlying dispute." Id. at 528, 108 S.Ct. at 1952. That is, the Supreme Court believed that "the issues that arise in forum non conveniens determinations will substantially overlap factual and legal issues of the underlying dispute, making such determinations unsuited for immediate appeal as of right under Sec. 1291." Id. at 529, 108 S.Ct. at 1953.
 
 
 23
 In contrast, we held in Praxis Properties that the district court's order granting a 45-day stay pursuant to the stay provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. Sec. 1821(d)(12), was separate from the merits because "when section 1821(d)(12) is properly applied, the decision to grant or deny a stay does not require (or, indeed, allow) an incursion into the merits of the dispute." 947 F.2d at 58 (3d Cir.1991). Rather, the requisite determinations influencing the stay decision were "sufficiently ancillary to the underlying action that the reviewing court need not become 'enmeshed' in the merits of the dispute." Id.
 
 
 24
 We conclude that District Court Judge Dalzell's February 22 dismissal order satisfies the "collateral" and "separateness" prong of the collateral final order doctrine. The district court's dismissal determination did not require the court to "become enmeshed in the merits of the dispute." Rather, the dismissal order was triggered solely by the district court's interpretation of the terms of the joint tortfeasor release granted by Carr to Red Cross. Although the dismissal, if sustained, would have an effect on the merits of this case--as almost all orders do--the district court was not required to "scrutinize the substance of the dispute between the parties" to reach its decision. It was only required to analyze the substance of the release, a collateral issue.
 
 
 25
 In addition, we are satisfied that Osteopathic's appeal raises an "important" question. "To fulfill the importance requirement, the issue must be one that is 'important in the jurisprudential sense.' " United States v. Santtini, 963 F.2d 585, 592 (3d Cir.1992), quoting Nemours Foundation v. Manganaro Corp., New England, 878 F.2d 98, 100 (3d Cir.1989). Justice Scalia explained in his concurring opinion in Lauro Lines v. Chasser, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989), that the right at issue must be "sufficiently important to overcome the policies mitigating against interlocutory appeals." Id. at 503, 109 S.Ct. at 1980. As discussed in text, infra, here, Osteopathic will be denied appellate review of the district court's dismissal order if that order is not reviewed by the Court of Appeals. We believe that such a situation raises a question of sufficient importance to overcome the policies mitigating against interlocutory appeals.
 
 
 26
 Thus, inasmuch as the order dismissing Red Cross on the terms of Carr's release also resulted in the dismissal of Osteopathic's cross-claim against Red Cross, we conclude that the question of dismissal is an issue which qualifies as "important," but one completely separate from the merits of the action.
 
 
 27
 Finally, we conclude that the district court's dismissal order, as it stands now, would be effectively unreviewable on appeal from final judgment, and that, therefore, the third prong of the collateral final order doctrine is satisfied.
 
 2.
 
 28
 Our recent decision in Powers v. Southland Corp., 4 F.3d 223 (3d Cir.1993), does not affect our holding. In Powers, the plaintiffs moved to amend their complaint in order to join an additional defendant, whose presence would defeat diversity jurisdiction, after the state statute of limitations had expired. The federal district court granted the plaintiffs' motion and remanded the entire case to Pennsylvania state court. We concluded that the underlying order permitting the plaintiffs to amend their complaint was not final because that order, though unreviewable in federal court, would be reviewable by the state appellate court on appeal, id. at 234-35, and that, thus, the "unreviewability" prong of the collateral final order doctrine was not satisfied. See also Transtech Industries, Inc. v. A & Z Septic Clean, 5 F.3d 51, 57 (3d Cir.1993).
 
 
 29
 By way of distinguishing the situation in Powers v. Southland Corp., in which all of the parties and the entire case were remanded to state court, from that resolved by the Supreme Court in City of Waco v. United States Fidelity & Guaranty Co., 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934), where the district court dismissed one party and remanded the remainder of case to state court, discussed infra, we noted in Powers that "[t]here is clearly no portion of this [i.e., the Powers] action that has not been remanded as there is no party or cause of action that has been dismissed in this case." Powers, 4 F.3d at 236-37 (3d Cir.1993).
 
 
 30
 Here, however, we are faced with a circumstance in which both a party (Red Cross) and, in effect, a cause of action (Osteopathic's cross-claim), have been dismissed by the district court prior to remand. As things presently stand, only Carr and Osteopathic will be sent back to the state court for further proceedings. Because Red Cross will not be before the state court on remand, the district court judge's underlying order of dismissal will be effectively unreviewable on appeal in either federal or state court.[7] In fact, not only is the order dismissing Red Cross "effectively" unreviewable, it is "actually" unreviewable.
 
 
 31
 That is to say we believe the present case presents almost the identical procedural context confronted by the Supreme Court in City of Waco v. United States Fidelity & Guaranty Co., 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934). There, plaintiff Boggs, a Texas citizen, sued a number of Texas defendants, including the City of Waco, in Texas state court. The City cross-claimed against Fidelity for indemnity and contribution. Fidelity removed the case to federal court. Boggs immediately moved to dismiss the City's cross-claim against Fidelity and to remand to state court. The district court granted both of those motions.
 
 
 32
 The City promptly appealed the district court's dismissal order. The Court of Appeals, however, refused to hear the City's appeal on the basis that "no appeal lies from an order of remand." The Supreme Court reversed, finding that the decree of dismissal preceded that of remand "and, if not reversed or set aside, is conclusive upon the [City]." Id. at 143, 55 S.Ct. at 7. The Court held that the City of Waco was entitled to have the Court of Appeals determine whether the dismissal of its cross-action was proper.
 
 
 33
 In City of Waco, however, the City had not appealed from the order of remand as Osteopathic has done here. Thus, the question of whether the remand order itself was reviewable was not before the Supreme Court. By necessity, however, the Court stayed the City of Waco remand order so that the Court of Appeals could comply with the Court's order to review the dismissal of Fidelity's cross-action.
 
 
 34
 Inasmuch as we find that all three prongs of the collateral final order doctrine are satisfied in the present situation, we conclude that the dismissal order is final.
 
 3.
 
 35
 In addition, we are satisfied that where, as here, dismissal of an appeal will have the practical effect of denying later appellate review of a district court's underlying order, the underlying order must be final, within the meaning of 28 U.S.C. Sec. 1291. See United Steelworkers of America, Local 1913 v. Union Railroad Co., 648 F.2d 905, 909-10 (3d Cir.1981) (holding that when dismissal of an appeal will have the practical effect of denying later review of a district court's order, appellate jurisdiction under Sec. 1291 may be appropriate).[8] See also Horizons International, Inc. v. Baldrige, 811 F.2d 154, 159-60 (3d Cir.1987); Bachowski v. Usery, 545 F.2d 363, 372-73 & n. 62 (3d Cir.1976); Daviess County Hospital v. Bowen, 811 F.2d 338, 342 (7th Cir.1987). The finality rule "reflects federal policy against piecemeal appeals: 'a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits.' " Praxis Properties, 947 F.2d at 54 n. 5 (3d Cir.1991), quoting Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981). Nevertheless, we have given "a practical rather than technical construction to the finality rule, without sacrificing the considerations underlying that rule." Fassett v. Delta Kappa Epsilon, 807 F.2d 1150, 1156 (3d Cir.1986) (finding finality where, to hold otherwise, would immunize plaintiffs' claims from judicial review forever), quoting Anderson v. Allstate Insurance Co., 630 F.2d 677, 681 (9th Cir.1980) (finding no danger of piecemeal litigation where district court had dismissed all federal claims and remanded state claims to state court). Thus, appellate jurisdiction was found to exist in both Fassett and Anderson where no part of either action remained in federal court.
 
 
 36
 As discussed above, the district court's dismissal of Red Cross, although not reaching the merits of Osteopathic's cross-claim against Red Cross, nevertheless had the effect of dismissing the cross-claim. Because the district court has remanded the cause of action to state court without Red Cross, all litigation with respect to the cross-claim has been terminated. If we do not seize the opportunity to review the district court's dismissal order, that order will never be subject to review by any court, either state or federal. Given the unique circumstances before us, we conclude that such an order, even if it were not to be considered final as a collateral final order (which we hold that it is), would, nonetheless, be final under Sec. 1291, and that our hearing an appeal from such an order is consistent with federal policy against piecemeal appeals.C.
 
 
 37
 Thus, we hold that the district court could not defeat appellate review of its February 22 order of dismissal--a final order within the meaning of 28 U.S.C. Sec. 1291--by the immediate remand of the present case to state court.
 
 
 38
 District Court Judge Dalzell's order not only dismissed Red Cross from the cause of action, but had the added effect of dismissing Osteopathic's cross-claim against Red Cross without review and without trial. Thus, Osteopathic has been, and will be, denied appellate review of the district court's order. Unless and until the district court's order is reviewed by the Court of Appeals on the merits, there is no way Red Cross can be restored to the litigation. A remand of this case to the state court would leave only Carr and Osteopathic as parties, as contrasted with the original three parties in the action. Hence, the instruction given to us by the Supreme Court in City of Waco cannot be carried out absent an appeal to this court which would result in the review of the district court's February 22 order dismissing Red Cross.
 
 
 39
 Consequently, we hold that we have jurisdiction to review the district court's dismissal of Red Cross, regardless of our authority to review the district court's remand order, an issue we discuss in text, infra.
 
 III
 
 40
 As we have recognized above, City of Waco teaches that even an unreviewable remand order may be stayed pending review of a collateral final order. We must now consider the question of the reviewability of the district court's remand order separate and apart from the reviewability of the order preceding remand. Aliota v. Graham, 984 F.2d at 1352-53 (3d Cir.1993). In so doing, we conclude from our reading of the cases analyzing Sec. 1447(d) reviewability, that we may review the remand ordered here by the district court.
 
 A.
 
 41
 A district court may remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. Sec. 1447(c). Section 1447(d) provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," subject to one exception not here relevant.
 
 
 42
 The Supreme Court has held that Sec. 1447(d) "prohibits review of all remand orders issued pursuant to Sec. 1447(c) whether erroneous or not and whether review is sought by appeal or extraordinary writ." Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 343, 96 S.Ct. 584, 589, 46 L.Ed.2d 542 (1976). The Court reiterated this point in Gravitt v. Southwestern Bell Telephone Co., 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977), in which it reversed the Fifth Circuit's vacation of a district court's remand order where the district court "had employed erroneous principles in concluding that it was without jurisdiction." Id.
 
 
 43
 Despite the apparent broad scope of Sec. 1447(d)'s bar on appellate review, the Court emphasized in Thermtron that Sec. 1447(d) must be read together with Sec. 1447(c) and "that only remand orders issued under Sec. 1447(c) and invoking the grounds specified therein," are immune from appellate review under Sec. 1447(d). 423 U.S. at 345-46, 96 S.Ct. at 590. Specifically, the Court held that Sec. 1447(d) does not bar appellate review where a case has been properly removed to the district court and the remand order is issued on grounds not referable to Sec. 1447(c). Id. at 343-45, 96 S.Ct. at 589-90 (holding remand order reviewable because "crowded docket" not ground for remand under Sec. 1447(c)).
 
 
 44
 Following Thermtron, substantial jurisprudence has evolved involving various remand orders which fall outside Sec. 1447(c) and which are thus reviewable.[9] We cannot help but observe that the entire subject of reviewability of remand orders has been under constant analysis by the various Courts of Appeal. It is evident that the cases which have discussed and permitted review of remand orders reveal that different approaches have evolved from that examination.
 
 
 45
 As discussed in text, infra section III(B), the Seventh Circuit would appear to authorize review of remand orders just so long as the initial removal to federal court was appropriate. See, e.g., In re Amoco Petroleum Additives Co., 964 F.2d 706, 708 (7th Cir.1992). The so-called Pelleport/Clorox doctrine--named after a series of Ninth Circuit cases and their progeny--would hold that an order of remand is subject to review by the Courts of Appeal where the remand is grounded on an underlying substantive order on the merits, provided it is nonjurisdictional. See, e.g., Clorox Co. v. United States District Court for Northern District of California, 779 F.2d 517, 520 (9th Cir.1985); Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 276-77 (9th Cir.1984); infra, section III(C). In this court, we have taken that progression one step further and have permitted appellate review of remand orders which are based on a district court's underlying jurisdictional determination which is inconsistent with a specific Congressional grant of federal jurisdiction. See, e.g., In re TMI Litigation Cases Consolidated II, 940 F.2d 832, 843 (3d Cir.1991); Aliota v. Graham, 984 F.2d 1350 (3d Cir.1993); infra, section III(D).
 
 
 46
 This progressive development leads us now to hold that the sounder, and additional, approach to permitting review of a 1447(d) remand order is that where a district court's dispositive order--whether substantive or jurisdictional--is separable from the subsequent order of remand, and meets the finality requirement of Sec. 1291, and where that final order triggers an order of remand, as it does here, the remand order itself must also be reviewable by the Court of Appeals.
 
 B.
 
 47
 As we have observed previously, the Seventh Circuit has adopted the position that the only relevant factor in determining whether a district court's remand order is reviewable is whether the case properly was removed at the outset. In re Amoco Petroleum Additives Co., 964 F.2d 706, 708 (7th Cir.1992).[10] That is, the Seventh Circuit holds that if jurisdiction exists in the district court at the time of removal, any subsequent remand order does not implicate Sec. 1447(c) and, thus, is reviewable under the Thermtron exception.[11]
 
 
 48
 We do not find it necessary to express our opinion on the Seventh Circuit's remand doctrine because the ground upon which we rely in reversing the district court here differs from the Seventh Circuit's analysis.[12] See, supra, section III(A) and typescript at 11. At the time Thermtron was decided, the relevant section of Sec. 1447(c) provided that "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs." (Emphasis added). Section 1447(c) now provides, however, that a district court may remand a case "at any time before final judgment it appears that the district court lacks subject matter jurisdiction."
 
 
 49
 A comparison of the old and new language of Sec. 1447(c) suggests that the amended version of Sec. 1447(c) no longer limits the district court's power to remand, to those situations in which jurisdiction is defective at the time of removal. The amended statute plainly states that the district court is authorized to remand a case any time it appears the court lacks subject matter jurisdiction.
 
 
 50
 Thus, we read the language of the amended statute to provide that removal is no longer the critical jurisdictional event. As we discussed above, under Thermtron, the prohibition in Sec. 1447(d) is co-extensive with the terms of Sec. 1447(c). Interpreting the two clauses together, other than in a City of Waco context, it is at least arguable that a Court of Appeals is without jurisdiction to review a district court's remand order so long as the remand is grounded in Sec. 1447(c).
 
 C.
 
 51
 The Ninth Circuit has adopted a different approach to circumventing the bar of Sec. 1447(d). Under the so-called Pelleport/ Clorox doctrine, "[w]hen a district court's remand order is based on a resolution of the merits of some matter of substantive law 'apart from any jurisdictional decision,' section 1447(d) does not foreclose appellate review of that decision." Clorox Co. v. United States District Court for Northern District of California, 779 F.2d 517, 520 (9th Cir.1985), quoting Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 276-77 (9th Cir.1984). Under Pelleport/ Clorox, the non-reviewability rule of section 1447(d) bars review of only those remand orders which are based on a lack of jurisdiction. All others are appealable under 28 U.S.C. Sec. 1291. Clorox, 779 F.2d at 520 (9th Cir.1985).
 
 
 52
 In Pelleport, the Ninth Circuit explicitly noted that "[h]ad the district court based its remand order on [a lack of jurisdiction], section 1447(d) would no doubt apply, because, even if clearly erroneous, a district court's decision that it lacks subject matter jurisdiction to hear a case is not reviewable." 741 F.2d at 276 (9th Cir.1984).
 
 
 53
 Nevertheless, in two cases which would not have come within the scope of the Pelleport/ Clorox doctrine because they implicated subject matter jurisdiction, see In re TMI Litigation Cases Consolidated II, 940 F.2d 832, 843 (3d Cir.1991) and Aliota v. Graham, 984 F.2d 1350 (3d Cir.1993), we did not rely on Pelleport/ Clorox even though we had invoked that doctrine elsewhere. See Foster v. Chesapeake Insurance Co., 933 F.2d 1207 (3d Cir.1991) (holding review of remand order based on forum selection clause not barred by Sec. 1447(d)). We discuss those cases and this court's expansion of remand reviewability, infra, section III(D).
 
 
 54
 Here too the Pelleport/ Clorox doctrine is not available to us inasmuch as the district court's remand order in the instant case was grounded in Sec. 1447(c) and justified by the district court on a jurisdictional basis.
 
 D.
 
 55
 As we have just discussed, on two occasions we have chosen to review a district court's remand order despite the fact that the order was based on the district court's determination that it lacked federal subject matter jurisdiction.
 
 
 56
 Judge Mansmann's opinion in In re TMI Litigation Cases Consolidated II, 940 F.2d 832 (3d Cir.1991), dealing with the consolidated cases arising out of the accident at the Three Mile Island nuclear power plant, involved review of a district court's determination that it lacked federal subject matter jurisdiction over public liability claims arising under the Price-Anderson Amendment Act and that remand was appropriate under the terms of Sec. 1447(c). After reviewing at length the legislative and judicial history of Sec. 1447, we held that the district court's ruling that the Act was unconstitutional, a ruling which triggered the remand order, was not the type of jurisdictional determination routinely and regularly made pursuant to Sec. 1447(c) and, thus, review of the district court's remand order was not barred by Sec. 1447(d).
 
 
 57
 We again had the opportunity to examine the restrictions imposed by Sec. 1447(d) in Aliota v. Graham, 984 F.2d 1350 (3d Cir.1993). In that case, the United States--which had been substituted for five federal employees in a defamation action--filed a mandamus petition asking this court to review a district court's order which had resubstituted the individual employees as defendants and then remanded the suit to state court. We held there that the district court's remand order was reviewable because the district court's subject matter jurisdiction, within the meaning of Sec. 1447(c), was established conclusively by the Attorney General's certification that the five employees had been acting within the scope of their federal employment when the disputed defamation occurred, pursuant to 28 U.S.C. Sec. 2679(d)(2).[13]
 
 
 58
 We noted that the district court's jurisdictional determination in Aliota stood "in marked contrast to the normal jurisdictional decisions made in connection with remand." 984 F.2d at 1357 (3d Cir.1993). We found that the Thermtron exception applied in that case because Congress had provided in 28 U.S.C. Sec. 2679(d)(2) that the district court's subject matter jurisdiction was established conclusively by the Attorney General's Sec. 2679 certification. Consequently, there was no "normal, routine, or regular" jurisdictional question upon which the district court could have based its remand decision.
 
 
 59
 As we construe our holdings in TMI Litigation and Aliota, those two cases have extended the Pelleport/ Clorox doctrine to the point that Sec. 1447(d) only bars review of remand orders based on the routine jurisdictional determinations that Congress has entrusted to the district courts. Inasmuch as neither of these two cases involved routine jurisdictional questions but, rather, concerned express Congressional specifications of jurisdiction, we concluded that we could review the respective remand orders.
 
 
 60
 Here, however, it would appear that we are faced with a garden-variety, routine jurisdictional determination. When the district court judge dismissed Red Cross from the Carr action, thereby dismissing the Osteopathic cross-claim, he did so, not because of Red Cross' special jurisdictional status arising from its federal charter, see Doe v. American Red Cross, 14 F.3d 196 (3d Cir.1993), but because of the perceived effect of the Carr joint tortfeasor release.
 
 E.
 
 61
 Thus, we have come full circle. We now add to the analyses of the Seventh, Ninth, and even the Third Circuits' doctrines the remand reviewability principle that we announced earlier: where a separable and final determination has been made by the district court, whether substantive or jurisdictional, which determination triggers a remand, we will review both the underlying final order and the remand order itself. See, supra, section III(A). Unless the remand order can be reviewed, a review of the district court's preceding order, which triggered the remand order, would be meaningless. Here, unless Osteopathic can obtain review in the federal court, it can never obtain review of Judge Dalzell's dismissal inasmuch as the state court will not have Red Cross or Osteopathic's cross-claim before it, and the state court will be obligated to give full faith and credit to the unappealed decision of the federal court.
 
 IV
 
 62
 The substantive issue of whether the district court's dismissal of Red Cross was in error can be disposed of readily. Osteopathic argues that the district court's decision to dismiss Red Cross unjustifiably ignored the existence of Osteopathic's cross-claim against Red Cross. Osteopathic contends that the cross-claim required Red Cross' continued presence in the litigation and created a basis of original subject matter jurisdiction independent of Carr's direct claim against Red Cross.
 
 A.
 
 63
 The Pennsylvania Uniform Contribution Among Tortfeasors Act, 42 Pa.Cons.Stat.Ann. Secs. 8321-27 (Purdon 1982) provides:
 
 
 64
 [a] release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.
 
 
 65
 Id. at Sec. 8326. As we recognized in Rocco v. Johns-Manville Corp., 754 F.2d 110 (3d Cir.1985), "for the Act to apply, it is necessary to establish that those allegedly culpable are joint tortfeasors." Id. at 114.
 
 
 66
 Consequently, under Pennsylvania law, "a defendant has the right to require a codefendant settling on a pro-rata release to remain in the case through trial and verdict to establish joint tortfeasor status." Davis v. Miller, 385 Pa. 348, 123 A.2d 422 (1956). If, however, joint tortfeasor liability is conceded by the settling parties in the joint tortfeasor release, a so-called "Griffin release," the need to keep the settling codefendant in the suit no longer exists. Griffin v. United States, 500 F.2d 1059 (3d Cir.1974); Young v. Verson Allsteel Press Co., 524 F.Supp. 1147 (E.D.Pa.1981).
 
 B.
 
 67
 Although Carr and the district court apparently relied on the terms of the joint tortfeasor release to justify the dismissal of Red Cross, and the subsequent remand to state proceedings, our review of the release, and the cases in Pennsylvania which could be interpreted to provide for that result, disclose that the release cannot be construed to satisfy any of the Pennsylvania cases that could suggest such a result. Red Cross admitted in its supplemental brief that although "the intent of the Carr release was to come as close to a true Griffin release as possible," it was, in fact, not a Griffin release because it "did not provide for an automatic reduction of any verdict." Red Cross Supp. Br. at 3-4.
 
 
 68
 The release here is, for all intents and purposes, identical to that in National Liberty Life Insurance Co. v. Kling Partnership, 350 Pa.Super. 524, 504 A.2d 1273, 1278 n. 6 (1986), where the court required a settling party to remain in the case for the purpose of obtaining a judicial determination of joint tortfeasor liability. Consequently, the district court erred in dismissing Red Cross from the present litigation.[14]V
 
 
 69
 So long as Red Cross remains a party to the litigation, there can be no doubt that the district court maintains jurisdiction over the cause of action. American Red Cross v. S.G., --- U.S. ----, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992). Once we have reversed the district court's dismissal order, and Red Cross is reinstated as a party, there remains no basis for remand.[15]
 
 
 70
 Having concluded that Osteopathic's appeal from the February 22 order of dismissal vested us with appellate jurisdiction, we will reverse the district court's February 22 order and direct the district court to reinstate Red Cross as a party in the removed proceeding. We will also direct that the order dismissing Red Cross be vacated and that Osteopathic's cross-claim against Red Cross be reinstated. Because, as we have noted, with the restoration of Red Cross to the federal action no basis for a remand exists, we also will vacate the remand order and direct the district court to take whatever steps are necessary, consistent with this opinion, to implement our directions so that the action can proceed in federal court.
 
 
 71
 Inasmuch as we have reached our disposition with respect to the appeal filed by Osteopathic at 93-1392, we will dismiss as moot the petition for mandamus that Osteopathic filed at 93-1450.
 
 
 72
 Costs will be taxed in favor of the appellant Osteopathic.
 
 
 
 [1]
 Section 1447 provides in relevant part as follows:
 (a) ....
 (b) ....
 (c) A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded....
 (d) An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.
 
 
 [2]
 Carr alleged at oral argument that Osteopathic, in fact, had never filed a cross-claim against Red Cross. Osteopathic's answer to Carr's complaint, however, included the following new matter:
 Crossclaim Pursuant to Pa.R.C.P. 2252(d)
 Against Co-Defendant, American Red Cross
 By way of further New Matter, defendant, Osteopathic Medical Center of Philadelphia, asserts the following crossclaim against co-defendant, American Red Cross, under Pa. R.C.P. 2252(d):
 (64) Plaintiff has instituted an action as of the above caption, alleging liability on the part of defendant, which liability has been denied.
 (65) The injuries and damages allegedly sustained by plaintiff were caused solely by the contributory negligence and carelessness of co-defendant.
 (66) It is averred that if plaintiff proves the allegations of the Complaint, co-defendant is solely liable or liable over to plaintiff.
 It is our view that this section of Osteopathic's answer was sufficient to state a claim for contribution and indemnity.
 
 
 [3]
 Pursuant to our decision in Doe v. American Red Cross, 14 F.3d 196 (3d Cir.1993), Red Cross was authorized to remove for a second time its previously remanded action to federal court. We acknowledge that no party in the present case contests the re-removal proceeding, although Osteopathic resists the re-remand to state court
 
 
 [4]
 Section 1367(c) provides as follows:
 The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
 (1) the claim raises a novel or complex issue of State law,
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 (3) the district court has dismissed all claims over which it has original jurisdiction,
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
 
 
 [5]
 As a preliminary matter, Carr argues that Osteopathic failed to perfect its right to appeal the district court's February 22 order dismissing Red Cross and remanding the case to the Philadelphia Court of Common Pleas by failing to file a notice of appeal within 30 days of the district court's entering its order
 Prior to December 1, 1993, Federal Rule of Appellate Procedure 4(a)(4) provided in relevant part as follows:
 If a timely motion under the Federal Rules of Procedure is filed in the district court by any party ... (iii) under Rule 59 to alter or amend the judgment ... the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion.
 Carr concedes that Osteopathic's motion for reconsideration was really a Rule 59(e) motion to amend judgment. Consequently, the date from which the clock started ticking under Rule 4(a)(4) was April 1, 1993. Osteopathic filed its notice of appeal on April 22, 1993, well within 30 days of the district court's April 1 denial of Osteopathic's motion for reconsideration.
 
 
 [6]
 The only cases Carr cites in support of his position--Funkhouser v. City of Newark, 312 F.2d 383, 384 (3d Cir.1962) and District 65, Distributive, Processing & Office Workers Union v. McKague, 216 F.2d 153, 155 (3d Cir.1954)--did not involve circumstances in which a district court's order of dismissal was followed immediately by a remand order
 
 
 [7]
 In Aliota v. Graham, 984 F.2d 1350 (3d Cir.1993), we noted that an order is effectively unreviewable when the order involves "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." Id. at 1353, quoting United States v. MacDonald, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978). There we held that a district court's resubstitution order, which had the effect of rejecting defendant federal employees' claim of immunity from suit for activities performed within the scope of their federal employment, pursuant to 28 U.S.C. Sec. 2679(d) (Westfall Act), was effectively unreviewable on appeal from final judgment since the value of the right to immunity--i.e., the right not to have to answer for conduct in a civil damages action--would be lost if not vindicated before trial
 
 
 [8]
 The issue in Union Railroad was whether a proceeding before a Board convened under the Railway Labor Act had been properly conducted. The railroad company had appealed a district court order setting aside the decision of the Board and ordering a completely new hearing into the grounds for termination of a union member's employment with the railroad. Analyzing the finality of the district court's order, we noted that because the district court had decided the disputed legal and factual issues, and directed a de novo investigative hearing, its order ended all litigation concerning the conduct of the prior Board hearing. In addition, we noted that "denial of appeal now may deny the Railroad an opportunity for later review" of the district court's order. 648 F.2d 905, 911 (3d Cir.1981). Consequently, we held that the district court's order was an appealable final order
 While we recognize that the finality in Union Railroad arose out of an administrative context, the principle giving rise to finality in that case is analogous to the principle expressed here--that when a district court's order has the effect of a final disposition which may be denied later review, appellate jurisdiction under Sec. 1291 may be found.
 
 
 [9]
 See, e.g., Air-Shields, Inc. v. Fullam, 891 F.2d 63 (3d Cir.1989) (holding review appropriate where district court had remanded case for procedural defects after 30-day time limit in Sec. 1447(c) had expired); Foster v. Chesapeake Insurance Co., 933 F.2d 1207 (3d Cir.1991) (holding remand based on forum selection clause not within Sec. 1447(c)); Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273 (9th Cir.1984) (holding remand based on forum selection clause not within Sec. 1447(c)); Clorox Co. v. United States Dist. Ct. for N.D. Calif., 779 F.2d 517 (9th Cir.1985) (holding remand on the basis of party's waiver of right to remove, not within Sec. 1447(c))
 
 
 [10]
 In analyzing Amoco's petition for writ of mandamus, the Court of Appeals stated that the dispositive question to be answered is whether there was subject-matter jurisdiction at the time of removal. Concluding that the district court believed removal was proper at the outset, the Seventh Circuit felt that it was not constrained by Sec. 1447(d), and that it could, therefore, review the district court's subsequent remand order. Amoco Petroleum, 964 F.2d at 709 (7th Cir.1992). The court explained that it understood the Supreme Court's holding in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), to permit review of a district court's remand order when the district court believed that removal itself was proper, even though later events which developed led to remand. Amoco Petroleum, 964 F.2d at 708 (7th Cir.1992)
 
 
 [11]
 The Seventh Circuit clarified its Amoco Petroleum reasoning in In re Shell Oil Co., 966 F.2d 1130, 1132 (7th Cir.1992) (granting mandamus in part and directing district court to explain why it remanded case). Judge Easterbrook stated as dictum in Shell Oil that the language of Sec. 1447(c)--i.e., remand is permitted "any time before final judgment"--does not mean that changes after removal can eliminate jurisdiction and compel remand. Rather, "[n]either the text of the revised Sec. 1447(c) nor its legislative history implies that Congress altered the traditional view expressed in St. Paul [Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (holding events occurring subsequent to removal which reduce amount recoverable do not oust district court's jurisdiction) ] ... that jurisdiction present at the time a suit is filed or removed is unaffected by subsequent acts...." Id. at 1133
 
 
 [12]
 Neither party now disputes that this case properly was removed from Pennsylvania state court to the U.S. District Court for the Eastern District of Pennsylvania following the Supreme Court's decision in American National Red Cross v. S.G., --- U.S. ----, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), and, more recently, our holding in Doe v. American Red Cross, 14 F.3d 196 (3d Cir.1993). If we were to follow the lead of the Seventh Circuit, the fact that the case properly was removed to federal court at the outset would, by itself, provide sufficient basis for this court to review the district court's subsequent remand order since, under Seventh Circuit precedent, it would not be considered a Sec. 1447(c) order
 
 
 [13]
 Section 2679(d) provides in relevant part as follows:
 (2) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed ... by the Attorney General to the district court of the United States.... This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.
 
 
 [14]
 In addition, a corollary effect of the district court's order dismissing Red Cross from the suit was to dismiss Osteopathic's cross-claim against Red Cross as well. Clearly, if the district court had a basis of independent subject matter jurisdiction over Osteopathic's cross-claim against Red Cross, the district court could not have dismissed Red Cross, nor could it have declined to exercise jurisdiction over the case, merely because Carr opted not to pursue his claim against Red Cross. National Research Bureau, Inc. v. Bartholomew, 482 F.2d 386, 388-89 (3d Cir.1973) (holding that once an issue with independent subject matter jurisdiction is before the court it must be allowed to proceed to a conclusion without regard to the fate of the original claim)
 Given the Supreme Court's holding in American Red Cross v. S.G., --- U.S. ----, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), and our recent holding in Doe v. American Red Cross, 14 F.3d 196 (3d Cir.1993), which was filed after oral arguments in this case, it is difficult to understand Carr's contention that the district court lacked federal subject matter jurisdiction over Osteopathic's cross-claim. If Red Cross' Congressional charter created federal jurisdiction with respect to Carr's claim against Red Cross, it also created an independent basis of federal jurisdiction with respect to Osteopathic's cross-claim against Red Cross.
 
 
 [15]
 The district court also held in its February 22 order that to the extent any supplemental jurisdiction may be deemed to remain after the release was executed, it declined to exercise such jurisdiction pursuant to 28 U.S.C. Sec. 1367(c). Our ruling overturning the district court's order of dismissal results in federal jurisdiction remaining in the district court. This being so, no basis exists for application of Sec. 1367(c)